Clark v. Rogers.

---

## CLARK v. ROGERS.

Where two were joint mortgagors of a piece of land, to secure the payment of a joint debt, and one of them, to protect the other against his liability for the payment of both moieties of the debt, delivered to him certain notes of hand not negotiable, to be collected, and the proceeds to be paid over to the mortgagee, to which delivery and appropriation the promissor in the notes was assenting;—it was held that the party so depositing and appropriating such notes could not afterwards lawfully receive payment of them from the promissor, nor release the latter from his liability to pay them to the holder.

ASSUMPSIT, upon three notes of hand. Plea, *non assumpsit.* At the trial the defendant read to the jury a receipt describing the notes declared on, of the following tenor;—" *Orono, May* " 19, 1822. Received of *James Rogers* full pay for three notes " of hand by him to me or order, which notes were lodged in " the hands of *Reuben Haines* of *Topsham*, the date and amount " of said notes are as follows," [describing them] " received pay " for the same by indorsements on note, and notes given up to " me which the said *Rogers* held against me. *Thomas G. Clark.*" —At the bottom was this memorandum signed by the plaintiff.— " *Mr. James Rogers*, I have received my notes, and if it is not

" settled to your satisfaction I will settle with you, in *August* I " shall be at *Topsham*."

The plaintiff then read in evidence a paper signed by said *Rogers* and others, of the following tenor;—" *Topsham, November* 11, 1817. Then *Thomas G. Clark* lodged in my hands the " following notes of hand signed by *James Rogers* and *Charles* " *Eaton,* according to the request of the said *Clark, Rogers,* and " *Eaton,* there they are to remain until they become due, after " that the proceeds of them are to be paid over to *Humphrey* " *Purinton* on the notes given him for the payment of a mortgage " deed of the land and privileges bought by the said *Clark* and " *Reuben Haines* in *May,* 1817. *Reuben Haines.*" Then followed a list of the notes referred to, among which were the notes declared on, at the bottom of which were the signatures of *Clark, Rogers* and *Eaton.*

The admission of this paper was objected to by the defendant's counsel on the ground that it had been altered in a material part by the addition of the name of *Haines* long after it was executed by the others, and that this alteration was made by *Haines,* which they offered to prove. But the Judge overruled the objection, and gave the plaintiff leave to become nonsuit, subject to the opinion of the whole Court whether the action could be sustained.

*Orr,* for the plaintiff.

The action, though brought in the name of *Clark,* is for the benefit of *Haines,* who is the plaintiff in interest, claiming the notes by virtue of the instrument of *November* 11, 1817. *Haines* and *Clark* had bought a parcel of land of *Purinton,* which they had mortgaged for the purchase money ; and to secure the payment of *Clark's* moiety and protect *Haines,* the notes in question were deposited with the latter for the purpose mentioned in the paper. And the question is, whether this is such an equitable assignment as the Court will protect against any attempt by *Clark* to control it ? It was an assignment upon good and sufficient consideration ;—for *Haines* had an interest in the subject matter, being bound as mortgagor to pay the *whole* debt. The redemption of the land by him would enure for the benefit of

*Clark*, against whom he would have none but a *personal* remedy. It was also entered into with good faith. *Haines* had a trust, coupled with an interest. He was by common consent made trustee for the benefit of the concern. The funds were set apart at the request of *Rogers*, to perform *Clark's* own obligation. The contract could not be rescinded but by the same parties who entered into it; and one of these was *Haines.* *Dunning v. Sayward*, 1 *Greenl.* 366. *Dunn v. Snell*, 15 *Mass.* 481. *Jones v. Witter*, 13 *Mass.* 304. It was not material *when* he signed it, nor that all should sign it at the same time. It was probably executed by the other parties, and then carried by them to *Haines*, in whose possession it remained till the trial. Nor was it necessary that *Haines* should extinguish the liability of *Clark* to *Purinton.* This was not in his power, except by payment of the money, to obtain which the notes in suit were deposited in his hands. It was only necessary that the funds should be appropriated in good faith by *Clark*, and *accepted by Haines ;* and this was done.

*Allen*, for the defendant.

The receipt offered in evidence is a complete answer to the action, unless *Haines* is beneficially interested as assignee of the notes. The only evidence of this interest is the paper of *November* 11, 1817; but this is void, having been altered in a material part, by adding the name of *Haines.* It was material, as making him a party to the contract, who was not so before. He was a mere depositary of the notes, without interest, and might be discharged at the pleasure of the parties. Had the money been paid to *Haines*, and not paid over by him to *Purinton*, the paper *as altered* would be evidence of itself to support an action against *Haines.* But *without* the alteration it would not. It was therefore a material alteration. *Homer v. Wallis*, 11 *Mass.* 312. *Hunt v. Adams*, 6 *Mass.* 519.

But if it be an immaterial alteration, and *Haines* really a party to the contract, yet being made *by him*, and after delivery of the instrument, it is void. *Hatch v. Hatch*, 9 *Mass.* 311. *Masters v. Miller*, 4 *D. & E.* 322.

And if it be immaterial, and rightfully made, yet *Clark* had a right to release the notes, unless he had parted with his *whole*

interest in them. Now the instrument itself contains no language of assignment,—and of course *Haines'* interest in the notes in his hands must depend on the other facts and circumstances of the case. But he had paid nothing for them. Nor had he discharged *Clark* from any liability in consideration of their being in his hands. The land was still under the mortgage. *Clark* was still liable on his notes given for the purchase money, and the land still liable to an entry for condition broken. And if *Haines* had chosen to pay the debt out of his own money, he might still claim of *Clark* a moiety of the money thus paid. As therefore he had no legal interest, because the notes were not regularly transferred to him,—and no equitable interest, because he had neither paid money nor assumed any liability in consequence of their being placed in his hands, he is not entitled to the protection of the law, against the rightful owner of the notes.

The cause being continued *nisi* for advisement, the opinion of the Court was delivered at the succeeding term in *Cumberland,* as follows.

MELLEN C. J. By the report it appears that *Clark* and *Haines* in *May*, 1817, purchased certain real estate of *Purinton,* and gave their joint notes for the purchase money, and a mortgage of the same estate as collateral security for the payment.

It was contended by the counsel for the plaintiff that the receipt or certificate bearing date *November* 11, 1817, and signed by *Haines*, in one place and by *Clark,* *Rogers*, and *Eaton* in another place, shews an *assignment* of the monies due on the notes therein described to *Haines*, or an *appropriation* of those sums for the purpose of paying the debt to *Purinton*, so soon as *Haines* should collect the same;—and that as *Rogers* was conusant of this assignment or appropriation, and by his signature, *assenting* to it; it was not competent for *Clark* to receive the monies due on those notes and give a valid discharge to *Rogers* as he attempted to do by his receipt of *May* 10, 1821.

The counsel for the defendant objects to the *legal validity* of the receipt or certificate of *November* 11, 1817, on the ground of its having been altered by *Haines* by his signing his name to it for improper purposes; and even if it be not liable to objection

Clark v. Rogers.

on *that* account, still that it does not amount to an assignment, or appropriation, or shew any equitable interest in *Haines*, entitled to legal protection.

With respect to this *first* objection, it may be observed, that fraud and forgery are not to be presumed; and according to the facts relating to this point which are stated in the report, it only appears that *Haines* signed the paper after it was executed or signed by the other subscribers; but no circumstances attending the signature are disclosed tending to shew that it was added with fraudulent intent, or even without the consent of the other signers; on the contrary, that part of the paper to which his name is signed is so drawn up, as evidently to shew that it was intended to be signed by *one person* only, and from the notes being deposited with him, that person must have been *Haines*. The language of the receipt or certificate is, " Then *Thomas G.* " *Clark* lodged in my hands," &c. For these reasons we are not disposed nor at liberty to consider the contract expressed in this paper as destroyed or impaired by the signature of *Haines*, under the circumstances of the case.

The remaining question is, what is the effect of the receipt or certificate above mentioned? If it be in legal contemplation an *assignment* or *appropriation* of the sum due on said notes to *Haines*, for the purpose of being paid to *Purinton*, in satisfaction of the joint notes and mortgage which he held, then *Clark* had no such controling power over the notes as he attempted to exercise; he had no right to discharge *Rogers* and thereby defeat the arrangement which all parties had made.

To render the assignment or appropriation a valid one, it must appear to have been made in legal form. The notes which were deposited with *Haines* do not appear to have been negotiable; or assigned by any instrument in writing other than the above mentioned receipt or certificate, which states the understanding and object of all concerned. But the notes were delivered over to *Haines* for the purposes contemplated; and we apprehend, according to the cases *Mowry v. Todd*, 12 *Mass.* 281, and *Jones v. Witter*, 13 *Mass.* 304, such an assignment is valid, if made on good and valuable consideration. To ascertain the consideration, we must have recourse to the above certificate. By that it appears to have been the object of those

who signed it, to place the notes in the hands of *Haines*, that he might be able to collect the monies due on them; and thence realize funds sufficient to pay *Clark's proportion* of the sum due to *Purinton.* In this manner, it must be understood, *Haines* was to be secured against the eventual payment of any thing more than *his own* proportion of the debts. In other words, *Clark* deposited the notes in the manner above mentioned with *Haines* in the nature of a pledge, and as collateral security for the benefit and safety of *Haines.*—In this view of the subject, *Haines* certainly had an equitable interest in the sum due on the notes, similar to what any pawnee or mortgagee of personal property has; an interest deserving legal protection, and one which *Clark* had no right to destroy or impair, in contravention of his own agreement and that of the others interested. And as *Rogers* was a party to this agreement, he had notice that the notes were to be paid to *Haines,* and not to *Clark.* After this notice, *Rogers* must be considered as paying the money to *Clark* in his own wrong. Of course the payment cannot avail him in this action; nor can *Clark's* discharge have any effect; *Clark*, it is admitted, never having paid his part of the joint debt to *Purinton.*

For many years courts of justice have been gradually becoming more and more inclined to protect *equitable interests*; less form is necessary now than formerly as to the mode of creating such an interest; the object has been to ascertain that *it is* an *interest* founded in *equity* and *justice* and on *good* and *adequate* consideration. The correctness of this position is in part proved by the cases of *Perkins v. Parker,* 1 *Mass.* 123. *Dix v. Cobb,* 4 *Mass.* 508. *Browne v. Maine Bank,* 11 *Mass.* 153. *Quiner v. Marblehead Insurance Company,* 10 *Mass.* 482. *Mowry v. Todd* and *Jones v. Witter,* before cited; and particularly *Dunn v. Snell,* 15 *Mass.* 481.

In the case before us, *Clark* by his receipt has attempted unjustly to destroy the effect of an equitable arrangement, to which he was a party, and thereby defraud *Haines,* whose interests this very arrangement was made to protect. It is the business of a court of justice to prevent the success of all such experiments.—We are satisfied that the nonsuit must be set aside.